## Vanhook, Administrator v. Hasty.

(Decided May 18, 1923.)

### Appeal from Rockcastle Circuit Court.

1. Contracts—Grantees Held Not Required to Furnish Grantor Meals Away from Premises.—A clause in a deed reciting that the grantor should retain exclusive control of one room, and while on the land should take her meals at the grantee's table, clearly limits her rights to meals to the time she occupies the land, and does not require the grantees to furnish her meals elsewhere.

2. Contracts—Unkind Treatment is Breach of Contract to Support Grantor on Premises.—Unkind treatment from a grantee or his family which the grantor could not reasonably endure would breach a contract by the grantee to furnish the grantor meals on the premises.

3. Contracts—Grantor can Recover Damages for Breach of Contract to Furnish Support on Premises.—An action for damages would lie for breach of a grantee's contract to furnish the grantor her meals on the premises.

4. Appeal and Error—Chancellor's Judgment Not Disturbed if Conflicting Evidence Leaves Mind in Doubt.—Where the proof on an equitable issue is conflicting and the mind of the court is left in doubt as to its truth, the judgment of the chancellor will not be disturbed.

5. Contracts—Evidence Held to Sustain Finding Grantor was Not Unkindly Treated by Grantee.—In an action to recover damages for breach of a contract to furnish to a grantor her meals on the premises conveyed, evidence held sufficient to sustain the chancellor's finding that the grantor was not so unkindly treated by the grantee as to compel her to leave the premises.

C. C. WILLIAMS for appellant.

L. W. BETHURUM, J. W. HOWARD and O'REAR, FOWLER & WALLACE for appellee.

Opinion of the Court by Judge Moorman—Affirming.

In 1913 Ruth Brown, the widow of Mason Brown, was the owner of a life estate in a tract of land in Rockcastle county. The remainder interest belonged to her six living children. Five of them joined with her in a deed conveying the land to her son-in-law, W. E. Hasty. The consideration was $600.00 to the remaindermen and the retention by Ruth Brown of exclusive control of the east room of the dwelling, with wood for fuel "while on said land," and the right "to take her meals at said Hasty's table so long as she remains a widow of said Mason M.

Brown or during her natural life as such.'' She remained on the farm, occupied the room, and was supplied with food from Hasty's table until December, 1918, when she left and never returned. In March, 1920, she instituted this action to recover damages for a breach of the contract in December, 1918, the equivalent of which, as she averred, was $25.00 a month for the rest of her life, the expectancy of which was eleven years. She asked to be adjudged a lien on the land to secure the payment of any judgment recovered. The breach of the contract consisted, as alleged, of such mistreatment by the defendant and his family as rendered it impossible for plaintiff to live in the house with them. The defendant denied that he had failed to carry out his contract in any particular, expressed his ability and willingness to fulfill it, and alleged that the plaintiff had voluntarily left his home without any fault on his part or that of any member of his family. This affirmative defense was put in issue, and the law and facts were submitted to the trial judge, who rendered judgment dismissing the petition. The plaintiff has died since the rendition of the judgment, and this appeal is prosecuted by her administrator.

There are two questions presented: First, could Hasty, under the terms of the deed and independent of his treatment of plaintiff, be required to maintain her away from his home; and, second, if he could not, did he breach the contract and deprive her of exercising the rights therein reserved to her?

The first question just mentioned depends on the contract itself. The language thereof pertaining to the consideration as to Ruth Brown is that she shall ''retain exclusive control of the east room of the dwelling, and wood on said land for fuel and while on said land to take her meals at said Hasty's table so long as she remains a widow of said Mason M. Brown or during her natural life as such.'' There is, in our judgment, no room for differences of opinion as to the meaning of this provision. The obligation of the grantee was to furnish Mrs. Brown meals ''while on said land,'' or, in other words, during her occupancy of the part of the house reserved to her. In Keltner v. Keltner, 6 Ben Monroe 40, a deed somewhat similar to this one was involved. A bill was filed to set aside the deed on the ground of the refusal of the grantees to support and maintain the grantor, their father.

The court held that the maintenance was to be furnished from the land, saying: "It was not expected that the sons should board their parents at another place, unless by mutual consent, or unless by their own conduct they had given them good reason for not remaining on the land." The clause under consideration is more restricted in its meaning than the one involved in the case just cited, for in that case there was no limitation on the obligation to maintain the grantor, while here the services of the grantee are limited to the occupancy of the land by the grantor. It seems plain, therefore, that the contract did not require appellee to furnish meals for the grantor at a place other than the house on the farm that was conveyed.

The second contention rightly assumes that unkind treatment from appellee or his family, which the grantor could not reasonably endure, would effectuate a breach of the contract. Keltner v. Keltner, *supra*. And also, in the event of such a breach, an action for damages therefor would lie. Pitman v. Doan, 175 Ky. 709. The first of these assumptions is to be determined on the evidence. In the briefs there are elaborate discussions of incidents related by the various witnesses, many of which have no probative value, or are susceptible of conflicting constructions, indicating ill-temper or nothing, according to the viewpoint of the witness. Mrs. Brown testified to occurrences which, if undenied, would undoubtedly sustain the claim of mistreatment. Appellee's evidence on those points conflicts with Mrs. Brown's version, and tends to show that her interpretation of their meaning resulted from a highly sensitive temper. Undoubtedly most of the incidents were trivial and are not uncommon among the members of a devoted family; others were sources of unwarranted inference. There may have been grounds for Mrs. Brown's belief that the treatment accorded her was not that to which she was entitled under her agreement, but the majority of the occurrences on which she relied neither sustained her contention nor justified her deductions. On the other hand the evidence for appellee shows that Mrs. Brown was treated with kindness and consideration, and that her grievances arose from trivial incidents which would have passed unnoticed by one less sensitive than she was.

This court has adopted the rule, in an unbroken line of decisions, that where the proof on an equitable issue is conflicting, and the mind of the court is left in doubt as

to its truth, the judgment of the chancellor will not be disturbed. Campbell, etc. v. Trosper, 108 Ky. 602; Quigley v. Beam's Admr., etc., 137 Ky. 325; Byassee v. Evans, 143 Ky. 415. If we were not otherwise convinced of the soundness of the trial court's finding we would be compelled, under this rule, to sustain the judgment. In view of this conclusion the judgment is affirmed.